The next case on our calendar is Olena Kalichenko, United States v. Olena Kalichenko. Good morning, Your Honor. May it please the Court, my name is Murray Singer, the attorney for Appellant Olena Kalichenko. I want to address point two of my brief, where we challenge on due process grounds, application of these criminal statutes to the foreign conduct of Justice Kalichenko. This argument was not addressed by the government in its brief. My concern is that application of the Ninth Circuit's sufficient nexus standard, that there must be a sufficient nexus between the defendant's conduct and the United States so that prosecution would not be fundamentally unfair, has resulted in any connection being enough. The standard which has been adopted by this Court recognizes that some applications of extraterritorial statutes to foreign conduct may be arbitrary and unfair, and thus violate due process. We urge the Court that this is such a case. The conduct prosecuted here was not done for the purpose of harming the U.S., U.S. citizens, or U.S. interests, factors that in the past have justified application of U.S. laws to foreign conduct. The government highlights the sending of the material and the payments in return, but those actions are the bare minimum to even get us before a U.S. court. There is no crime here without the sexual abuse and the filming of the sexual abuse by a Ukrainian citizen of another Ukrainian citizen in the Ukraine. No question about it. This is Judge Park. How about with the U.S. co-conspirator? Doesn't that change the analysis? The U.S. co-conspirator, again, the conduct which is the gravamen of the complaint, and conspiracy counts, the gravamen of the conduct of the criminal charge is the sexual abuse that was in the filming of it, which was done in the Ukraine. Clearly, the fact that there is a U.S., a person in the U.S. is receiving, who both encouraged and paid for and received some of this material is necessary. Without that, we wouldn't even be in a U.S. court. But this is not a conspiracy to distribute or to sell it or anything of that nature, which is actually codified in 2252, a separate section of 2252. Counsel, what about the money sent from the United States to the Ukraine? Well, again, the money being sent to the Ukraine and the fact that Ms. Kalachanko sent these videos that she made to the U.S., I argue, are the bare minimum to get this even into a U.S. court. But that doesn't answer the... I'm sorry, Your Honor. No, if you argue it's the bare minimum, so doesn't that defeat the extraterritoriality complaint that you have? No, and that was addressed in point one in terms of the extraterritorial application of the statutes. I'd be happy to address that, Your Honor, if you want me to address that point. No, argue as you see fit. All right, well, for the two of the statutes clearly do not have any affirmative indication in the language of the statutes as required by RJR Nabisco for there to be extraterritorial application of those statutes. Two of the statutes clearly do have extraterritorial application. And then you look to the due process argument, which I've made in point two of my brief, which is that even where there is or may be an appropriate extraterritorial application of a criminal statute, there may be circumstances under which it would be arbitrary and fundamentally unfair to apply it to the foreign conduct. And that's what the Ninth Circuit standard, again, which has been adopted by this circuit, says that even where there is a conduct that would permit, that in some circumstances would permit application of the U.S. statutes to foreign conduct, it's not always the case. Well, how is this any different than EPSCAMP or other cases involving narcotics with the production and most of the work done overseas? The justification for denying the due process claim in those cases involving any importation of narcotics had to do with the fact that that conduct, sending large amounts of narcotics to the United States, was designed for and the purpose is to cause harm to U.S. citizens and the U.S. interests and to the United States by bringing something that's going to be sold within the United States to people in the United States is going to cause harm here. That is not what we have here. This was the sexual abuse of this child in the Ukraine was sent to a single individual. Right, but that's not the only harm that is behind the statute, right? The harm is about a market for child pornography that gets launched and then this video or these videos, once in the United States, are going to take place in the United States and feed this market for children, right? In theory, but that's not what was alleged here. There's a particular statute under the subsection under 2252 that addresses that and that was not charged here. There's no allegation that that ever happened. In fact, there's no evidence that it ever happened. It was to that individual and never went beyond that individual. So the harm, I mean, yes, the harm could be broader, but the harm that underlies these statutes is the sexual exploitation and sexual abuse of the child and all of that occurred in the Ukraine. Again, by a Ukrainian citizen, upon a Ukrainian citizen in the Ukraine, and that is why we argue that they're under the facts of this case and the broader circumstances under which Miss Kalachenko was acting, the pressure that she had both financially in her country and being brought by the person here and all of those things we suggest does not provide a sufficient nexus to provide, to avoid this being fundamentally unfair to prosecute Miss Kalachenko in the United States. These should be and are appropriately charged in the Ukraine and the Ukrainian government has weighed in on that and has expressed in a communique to the U.S. government that did this several years ago that they believe that they are the proper authorities to prosecute this conduct. So again, the fact that there is some connection to the United States, I mean, I certainly can't and would not argue that there is no connection to the United States, obviously there is or we wouldn't be here, but the Ninth Circuit's sufficient nexus standard doesn't suggest that any conduct simply makes it sufficient to avoid the due process problem. If we were to do that, there's no need for this standard and I suggest to this court that the existence of the standard and the application of the standard, what we look to is the, what is the conduct, what is, is there a particular harm to the U.S. citizen, to a U.S. citizen or U.S. interest that overrides it, that makes it appropriate for the U.S. government to prosecute. Well, pornography. This is not a case that, yes, it does, Your Honor, but this is not a case that involves a market for child pornography. It wasn't charged that way. There's no evidence to suggest that that is, that that was anyone's purpose. It was a private transaction between two people. What does the recipient do with the disc once he got it? There's no evidence that he did anything. He possessed it. He had it at his home, which was found by the government after Mr. Kalashenko turned him in. But that possession itself is a crime and it's a crime in part because that possession can yield other possessions and distributions, right? Well, it's a crime not because it can yield other possessions. It's a crime because possession of it is a crime. So Mr. Valerio possessed these videos that were sent to him by Ms. Kalashenko. The criminal conduct was possessing them. It wasn't the fact that it could be or in theory could end up in some other's hands. If that had been the case, there would be a separate charge under 2252. But that was not the case here. Counsel, your time has expired, but you've reserved two minutes for rebuttal. I did not. I did not reserve any time for rebuttal. I would simply urge this court to consider whether there is a sufficient nexus based on Ms. Kalashenko's conduct and the gravamen of the complaint and would urge the court to reverse the convictions, dismiss these charges, and return Ms. Kalashenko to the Ukraine where the Ukrainian authorities can determine how best to address her conduct. Thank you very much. Thank you, counsel. Forgive my error. We'll hear from the government. May it please the court. My name is Alan Bodie. I'm an assistant United States attorney in the Eastern District of New York. It's not necessary for the court to decide here the scope of the extraterritorial reach of the conspiracy to sexually exploit a child in transportation charges because there was ample evidence of territorial jurisdiction here. I'll be very brief since counsel really did not argue this point. Kalashenko was not charged with sexual abuse in the Ukraine. She was charged with conspiring with a United States co-conspirator here in the Eastern District. As part of that conspiracy, she engaged in numerous communications to and from the United States. She received directions as to child pornography to produce. She requested payments for the child pornography she sent. She received approximately 48 wire payments totaling over $12,000 in exchange for her work. She produced approximately 47 videos over a seven-month period in 2012, which she then transported into the United States to her co-conspirator. This is not conduct occurring, quote, wholly beyond the borders of the United States, as this court talked about in Weingarten when considering the extraterritorial reach of another statute, a related statute. Turning to counsel's due process argument, Congress has, as far back as 1977, concluded that there was a worldwide market for child specifically said that photographs and films that the legislation was attempting to cover were, in fact, produced abroad. At that time, it was common for photographs and films made in the United States to be sent to foreign countries, to be reproduced, and then returned to the United States in order to, quote, give the impression of foreign origin. From the outset, this is conduct that Congress was trying to capture. Kalashenko's conduct here in the Ukraine in communicating with her United States co-conspirator from the Ukraine was feeding her predatory co-conspirator here. He is part of that market, and once that child pornography is here in the United States, it's quite common for child pornography defendants to trade collections to get counsel. Your opposing counsel just told us there was no evidence that Mr. Valerino attempted to distribute this. I agree. There's no evidence that he did distribute. It was found in his collection, but what counsel was arguing is that it didn't feed the market, and it certainly feeds the market because he now has child pornography that's produced, which is, you know, produced child pornography that's not out common on the internet is a very valuable commodity in that market, sadly. But only if he chooses to distribute it. It's not valuable if he just keeps it. Is it? Well, it's valuable to him, Your Honor, and he paid $12,000 over a variety of over seven months to Kalashenko for that child pornography, and she sent it here to the United States, and the fact that someone who has a sexual interest in children is being fed with this material creates a danger for children in the United States, Your Honor, and that's why Congress as far back as 1977 attempted to address this problem. Counsel, we have... This is Judge Park. Oh, go ahead. I was going to ask about the statutory interpretation. I know your argument is that this is domestic conduct, but my question has to do with the extraterritorial application, and as I understand it, there's a presumption against, but here you've got the language and the two provisions that say that using or affecting foreign commerce, but then that's not dispositive. So you then look to legislative history to... I think this is what you were getting at, to ascertain Congress's intent, whether it was to reach foreign activity? Yes. Is that... I'm just trying to make sure my analysis here is right. Yes, that's exactly right. Our first position is obviously that you don't even need to get to that presumption because this is territorial, but if you do get there and the plain language of the statute is not enough, then you would go to the legislative history, which we assert is very clear here. And in terms of... One other thing I would note in terms of the due process argument is the statute here, production of child pornography, for example, which this was a conspiracy, there is a jurisdictional hook where things that are... Where it's actually sent to the United States, which it was here, but you could conceive of a situation where there's a child abused in the Ukraine by someone in the Ukraine with no intent to send to the United States, and that is not the case here. There's direction here, but... This is a case in which Valerio basically outsourced his production, right? Exactly. And he gave her scripts to follow. She followed those scripts. She requested payments. But I could see counsel might have an argument where this... A case where she never intended to send this material to the United States, but she knew from the outset that that was the purpose, was to send to the United States. And I submit it would implicate narcotics statutes, wire frauds, and all sorts of statutes which target foreign behavior that affects United States citizens and the security of the United States. And as far back as 1977, Congress has been trying to attack that problem in terms of child pornography. So you're suggesting we should limit this, our holding, to the domestic application? Yes. I don't think the court needs to reach extraterritorial questions here. Weingarten, the case that we cite in our brief, where the court was looking at transportation of a minor for the purpose of a sexual act, was moving from one country outside the United States to another country outside the United States. And the court was deciding if that was enough. Here, it's not a question like that. There's constant and, frankly, daily contact between Kalachenko and Valerio to discuss this 48 videos and 47 payments, approximately. So we don't think we need to reach the extraterritorial question. I'll briefly just address her pro se argument regarding withdrawal of the guilty plea. Then Judge Bianco correctly found it was not an abusive discretion to deny. He's still a judge. He is. He is. So, yeah, don't tell him I said that. So, you know, here Kalachenko is not asserting any legal innocence argument. A substantial amount of time elapsed, three years, and the government would be substantially prejudiced by the withdrawal of the plea. Although I'm sure they could be recalled, all the agents except one have retired. The actual hard drives are now seven years old. But they still exist, right? They still exist. But I think state of the art is they recommend every five years there's worry that sectors fail. So there's substantial reasons here. And the hard drives would have to be reexamined at this point, Your Honor, because the forensic examiner has retired and all his files are not current. You'd have to load the drives again and reexamine them. So it would cause substantial prejudice to the government. And in a case where there's no legal innocence argument, where it's an extraterritorial statutory argument, we submit that that would not be appropriate. Unless Your Honors have any questions for me, I'll rest on my brief at this point. Thank you. Thank you both. We'll reserve decision. And I will. They're in court. Thank you. Court is adjourned.